Hon. JAMES BARRETT,
Hon. HOMER E. ROYCE,
Hon. TIMOTHY P. REDFIELD,   } Assistant Judges.
Hon. JONATHAN ROSS,
Hon. H. HENRY POWERS,
Hon. WALTER C. DUNTON,

---

### ADAMS, by next friend, *v.* ADAMS and Another.

### *Pauper.  Trespass to the Person.*

The mother of a bastard, while pregnant, charged A. with being the father thereof. A. thereupon gave a bond of indemnity to a town likely to be charged with the child's support.  After birth, the child was supported by the town, and the town brought suits and obtained judgments against A. for breaches of the bond.  A. finally paid said judgments and assumed the support of the child, whereupon the selectmen authorized him to take the child, which he did, and, as its father, carried and gave it to a charitable institution.  In trespass by the child, through the agency of the overseer of the poor of said town, for assault and false imprisonment for such taking and giving away, wherein A. denied his paternity of the child, *Held,* that by virtue of the authority derived from the town, A. had a right to the custody and control of the child.

TRESPASS for assault and false imprisonment. Plea, not guilty, and notice that the defendant, John F. Adams, theretofore executed a bond to the town of Barnet for the support of a bastard child then expected to be born of the body of one Elizabeth Mason, and that after the birth of said child (the plaintiff) certain suits were commenced on said bond against the said John, wherein judgments were obtained for the expense of the support of said child, and that on October 11, 1875, the said John and the selectmen of said town, with the consent of the agent for prosecuting and defending suits, made a written settlement of said suits and judgments, and that the selectmen, who had control of the matter, gave the said John written authority to take said child from the care and custody of the town, in pursuance of said settlement, and on payment of the sums therein mentioned, and that the said John, under the authority thus given him, and by virtue of said settlement, quietly and peaceably took said child into his care and custody, without any force, violence, or injury to said child, for the purpose of its support and protection, and to take care of it, and carry out said contract of settlement; and that he provided a good and suitable place and home for said child, where it would have proper care and support without any expense to said town; and that this suit was brought by the overseer of the poor of said town without authority, and for the purpose of harassing and perplexing the said John.

Trial by jury, December Term, 1876, Caledonia County, Ross, J., presiding.

It appeared from uncontradicted testimony that the plaintiff was about three years old, and the illegitimate child of one Elizabeth Mason, a single woman, who lived in Barnet; that nearly from birth the plaintiff had been supported by said town, and been taken care of by a Mrs. Blaine from about three months old to October 13, 1875, when the defendants took the child to the Home for Little Wanderers, in Boston, and left it there; that afterwards the defendant John signed a writing, giving the child to that institution as the putative father; that the child was gone from Mrs. Blaine's about eight days, when it was returned by Robert Gibson, overseer of the poor of said town, who had put

the child at Mrs. Blaine's. Said Gibson paid out $51 in going after and returning the child, and charged the same to the town, and the town paid it. Gibson testified on cross-examination that he supposed he went to find the child more at the request of its mother than as overseer of the poor.

On behalf of the defendants it appeared, subject to the exception of the plaintiff, that Miss Mason swore the child on to the said John before its birth, and as it was likely to be a charge to the town, the overseer of the poor and town officers procured the said John to give a bond with sureties in the sum of $500, to save the town from its support; that this bond was subsequently sued, and judgment obtained against the said John alone, for the penalty of the bond, and for the amount expended by the town for the support of the child to that time; that subsequently a *scire facias* was brought on that judgment, and a judgment obtained for the further sum expended by the town in the support of the child; that both of these judgments were less than the penalty of the bond, and in force and uncollected on October 11, 1875, when the said John settled said suits and his liability on said bond, with Gould and Moore, two of the selectmen of the town, and with Smith, the agent for prosecuting and defending suits, the said John for that purpose paying the town $250, and agreeing to save the town harmless from the further support of the child, for his performance of which his mother and the other defendant, his sister, became sureties, the selectmen at the same time giving him an order on said Gibson, overseer of the poor, for the child. It was conceded that the said John paid the town the $250 as agreed, and that the same was reported to the town at its March meeting, 1876, and that the town still retains the same. The defendants did not deliver the order of the selectmen to said Gibson before taking the child, and Gibson was not a party to said agreement, but they left said order with Mrs. Blaine when they took the child, and she sent it to Gibson that night or the next day. The defendant John testified that he did not consider himself the father of the plaintiff. The defendants claimed the right to take the plaintiff and carry him to Boston solely by force of the facts stated as their defence, to proving all which the plaintiff excepted.

Adams, by n. f., *v.* Adams et al.

There being no controversy of fact except as to the amount of damages, the court submitted only the question of damages to the jury, who returned $78.68 damages, exclusive of said Gibson's expenses in going for and returning the child, and $133.67 inclusive thereof.

On the foregoing facts, the court rendered judgment, *pro forma*, for the defendants; to which the plaintiff excepted.

*Belden & Ide* and *Dickey & Blodgett*, for the plaintiff.

*Walter P. Smith*, for the defendants.

The opinion of the court was delivered by

POWERS, J. The mother was the legal guardian of the child John F., but having omitted her duty to support the child, her right as guardian to its custody was supplanted by the paramount right of the town which had become burdened with its support. While a pauper, the overseer, in behalf of the town, had the "care and oversight" of the child. The selectmen had full authority to settle with the defendant John his liability on the bond executed for the support of the child, in such manner as they deemed best for the interests of the town. The defendant, by the terms of that settlement, was entitled to the custody of the child as against the town or any of its officers. The child thenceforth ceased to be a pauper, and, lacking this character, the overseer lost his right to its "care and oversight." The defendant, by the terms of the settlement, undertook the support of the child, and was entitled to its custody, that he might perform his contract.

The mother is not here claiming any infringement of her rights; but the child, by the agency of the overseer, is made to stand as a claimant of damages for a false imprisonment. He has the same claim that any pauper has when its custody is shifted from one keeper to another.

Judgment affirmed.